Hibson, J.
The appeal presents the primary issue whether, upon an application to the Appellate Division for an order to enforce an order of the Human Rights Appeal Board imposing sanctions, upon finding respondent guilty of an unlawful discriminatory practice[1], the Appellate Division may consider the merits of the board’s determination despite respondent’s failure to seek judicial review of the order finding discrimination, within the 30-day period limited by the statute. The Appellate Division considered that it had power to review the merits, and, upon finding that the board’s determination was not supported by sufficient evidence, denied the application and dis *324 missed the petition. The court was correct in each respect, and its order must be affirmed.
There is no great dispute as to the facts and the difficulty lies with the inferences which the board drew from them, and which the Appellate Division correctly found to be completely unwarranted. .
The respondent, Mrs. Bystricky, owned a house at Apalachin which she and her four children occupied. She .considered moving and contracted to sell to the complainant, Mr. Watkins, a black, after she had been, according to her testimony, badgered by a real estate agent into listing her property with him, upon his assurance that he would find her a suitable house in nearby Vestal where her children were in school.
Although she was shown homes by the real estate agency, she found nothing suitable. Nothing in the agent’s testimony tends to contradict Mrs. Bystricky except as he testified that he made no [1] ‘ promises ’ ’ to find her another home. In fact, his testimony seems generally corroborative of respondent’s recital of the events leading up to the contract.
After the agreement was signed in May, 1968, with an August 1, 1968 closing date, later extended, Mrs. Bystricky, according to her unrefuted testimony, began to become concerned. She was unable to locate another home that suited her and she desired to have her four children remain in the Vestal schools. During this period she twice communicated with Mr. Watkins, attempting to prevail upon him to withdraw from the contract because of her plight, but this he declined to do. It is to be noted that Mrs. Bystricky knew that Mr. and Mrs. Watkins were Negro before she signed the contract as she had met them when the agent showed them the house.
Mrs. Bystricky failed to appear at the closing and on October 4, 1968 Mr. Watkins brought a specific performance action, as to which there is nothing in the record beyond the parties’ stipulation that the action had been commenced on that date; but there is no indication that it is no longer viable. It was certainly pending when Mr. Watkins made the discrimination complaint on October 29, 1968, in which he deposed that no other sort of redress was pending, and it was pending when *325 the hearings commenced.[2] In his complaint to the division, Mr. Watkins suggested that Mrs. Bystricky’s neighbors had objected to the sale after the signing of the contract, but no evidence was ever produced to substantiate this and the testimony of two of Mrs. Bystricky’s neighbors was to the contrary.
The Commissioner’s determination rests upon the critical finding that respondent failed to consummate the sale to complainant “ solely because of his race and color ”. The Appellate Division, in well-considered opinions, correctly found no substantial evidence supportive of the board decision. As Mr. Justice Sweeney wrote: “ The record merely establishes that complainant is black and respondent refused to sell him her property. To meet the standard of substantial evidence it must further appear that the reason for the refusal was because he was black. This the present record fails to do.” (36 A D 2d 278, 280.) Mr. Justice Reynolds, concurring, found “ not a scintilla of evidence, let alone substantial evidence in the record, which even suggests that the respondent refused to sell her property to complainant because of his color” (pp. 280-281). The sole dissenter did not reach the merits.
We turn, then, to the legal issue, which is that with respect to section 298 of the Executive Law. The first sentence provides : ‘[1] Any complainant, respondent or other person aggrieved by any order of the board may obtain judicial review thereof, and the division may obtain an order of court for its enforcement and for the enforcement of any order of the commissioner which has not been appealed to the board, in a proceeding as provided in this section.” The very last sentence of the long section provides: “ A proceeding under this section when instituted by any complainant, respondent or other person aggrieved must be instituted within thirty days after the service of such order.”
*326 Concededly, respondent took no appeal and when the division commenced its proceeding for enforcement, she responded pro se, as she does in our court.
The proceeding in the Appellate Division, whether instituted -by the Division of Human Bights or by a party aggrieved, is initiated by petition, whereupon “ the court shall have jurisdiction of the proceeding and of the questions determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter upon the pleadings, testimony, and proceedings set forth in such transcript an order enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part such order.” (Executive Law, § 298; emphasis supplied.) It is further, and importantly, provided in section 298: “ The findings of facts on which such order is based shall be conclusive if supported by sufficient evidence on the record considered as a whole.”
Clearly, the powers of the Appellate Division to review, to modify or set aside and to impose the test of “ sufficient evidence on the record considered as a whole ”, apply equally and without reservation to enforcement as to review proceedings. The concept, urged by appellant, of mere ministerial approval— indeed rubber-stamp action—on the part of the Appellate Division seems a novel one; and we do not believe that the Legislature intended either to downgrade the judicial functions of the appellate arm of the Supreme Court with respect to an administrative order or to burden that court with pro forma proceedings. In any event, the statute is unambiguous and in plain language requires the Appellate Division to examine and test the merits in any proceeding properly before it, whether initiated by a party aggrieved to obtain review, or by the division itself to obtain an order of enforcement.
Appellant’s contention has been raised not only in the Third Department case now before us but in the Second and Fourth Departments as well and has, in each instance, been rejected.
Thus, in Matter of Hempstead Volunteer Fire Dept. v. New York State Div. of Human Rights (35 A D 2d 601 [2d Dept., 1970]) an order of enforcement was granted only after examination of the merits, following explicit rejection of the division’s contention that the court was without power to look to the evi *327 deuce, the court stating: “ We do not think that the 30-day statutory period of limitation in section 298 of the Executive Law was intended to mean that we are without jurisdiction to examine the merits of the division’s order when the division seeks from us affirmative court action in the form of an enforcement order. ’ ’ The same court held to like effect in Ernsteins v. State Div. of Human Rights (35 A D 2d 599, app. dsmd. 28 N Y 2d 802). Similarly, the Fourth Department reviewed the merits upon an application for an enforcement order in Matter of Moskal v. State of New York, Executive Dept., Div. of Human Rights (36 A D 2d 46, 49), holding: “ The statute (Executive Law, § 298) expressly provides that the findings of fact of the division 1 shall be conclusive if supported by sufficient evidence on the record considered as a whole ’. Substantial evidence to support the division’s findings is sufficient and precludes this court from holding to the contrary [citations].” Another Fourth Department case of like tenor is State Div. of Human Rights v. McGinnis (37 A D 2d 759).
The issue was before us in Matter of State Div. of Human Rights v. Luppino (35 AD 2d 107, affd. without opn. 29 N Y 2d 558), in which we declined to enforce so much of the division’s order as awarded compensatory damages, in a Second Department case in which respondents had not even appealed to the Appeal Board. The Appellate Division found 1 ‘ sufficient evidence to support the finding of discrimination ” (p. 109; emphasis supplied) but found, also, ‘ ‘ a complete absence of any proof to sustain an award for mental anguish ” (p. 111). In the Court of Appeals, the division argued ‘1 that, in an enforcement proceeding, where no objections were filed to the proposed order and no appeal was taken to the State Human Rights Appeal Board, the court was foreclosed from reviewing the substantiality of the evidence in support of the Commissioner’s findings ” (29 N Y 2d 558, 558-559); but this contention was implicitly and necessarily rejected by our affirmance of the Appellate Division’s denial, in part, of an enforcement order for lack of sufficient supportive evidence. The same result must follow here.
The order of the Appellate Division should be affirmed, with costs.
*328 Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
Order affirmed.

. In “ that Respondent failed and refused to consummate the sale of her house to Complainant solely because of his race and color.” (Commissioner’s Finding No. 20.)

. The conclusion that we reach with regard to the issue of statutory construction renders unnecessary a consideration of the additional question, whether, in the light of this record, the complainant’s commencement of a specific performance action prior to his complaint to the State Division of Human Rights constituted an election of remedies within the contemplation of the statutory provisions (Executive Law, § 297, subd. 9; § 300) which in such case bar action under the Human Rights Law.