54 N.Y.2d 379 (1981)
In the Matter of New York City Board of Education, Community School Dist. No. 1 et al., Respondents,
v.
Roberto Batista et al., Appellants.
In the Matter of New York City Board of Education, Community School Dist. No. 1 et al., Respondents,
v.
Theodore Fletcher et al., Appellants.
Court of Appeals of the State of New York.
Argued October 20, 1981.
Decided November 24, 1981.
Joseph Peter Flemming, Kenneth Kimerling and Margarita Rosa for Roberto Batista and Theodore Fletcher, appellants.
Elaine Berger and Ann Thacher Anderson for State Division of Human Rights, appellant.
Allen G. Schwartz, Corporation Counsel (Carol R. Abramson, Leonard Koerner and Judith A. Levitt of counsel), for respondents.
Judges JASEN, GABRIELLI, JONES, WACHTLER, FUCHSBERG and MEYER concur.
*381 Chief Judge COOKE.
These cases involve the claims of two public school administrators that they were removed from their positions for racially discriminatory reasons. Roberto Batista, a native of Puerto Rico, and Theodore Fletcher, who is black, were removed by respondents in 1974 from their positions as interim acting principals in Community School District No. 1 in New York City. The State Division of Human Rights found that respondents unlawfully discriminated against Batista and Fletcher, and the State Human Rights Appeal Board affirmed. Since substantial evidence supports this determination, the orders of the Appellate Division vacating the board's orders should be reversed.
Batista was selected in May, 1973 by the Community *382 School Board of District No. 1 to be acting principal of P.S. 64. Fletcher was hired in June, 1973 as acting coprincipal of P.S. 188 in District No. 1 on Manhattan's Lower East Side. In mid-1974, the Community School Board notified Batista, Fletcher and four other principals in District No. 1 that their appointments were invalid because the board had failed to comply with a directive of the New York City Board of Education. That directive, Special Circular No. 30, required that all supervisory openings be advertised for 30 days before being filled. Batista, Fletcher and the four others affected were therefore reclassified from acting principals to interim acting principals.
The school board subsequently removed Fletcher and Batista from their principalships and they were assigned to other duties. They filed complaints with the Division of Human Rights alleging that their removals were racially motivated. Following hearings, the division found the removals to be part of an unlawful discriminatory pattern and practice of removing black and Puerto Rican principals in the district from their interim acting principalships and replacing them with white principals. The State Human Rights Appeal Board affirmed the division's orders granting injunctive relief and compensatory damages. The Appellate Division, however, annulled and vacated the orders, finding insufficient evidence in the record to support the division's determinations. For the reasons that follow, the Appellate Division erred.
At the outset, it should be emphasized that there is no dispute over the propriety of the reclassification of Batista, Fletcher and four other acting principals due to the failure to adequately advertise the openings. Likewise, it is not disputed that an interim acting principal, who serves at the pleasure of the district superintendent, has no vested property right in his or her position.
Although Batista and Fletcher had no vested rights in their positions, they could not be discharged for a constitutionally or statutorily proscribed reason (James v Board of Educ., 37 N.Y.2d 891). Among the impermissible reasons for discharging an employee are the employee's race and national origin (Executive Law, § 296, subd 1). That an employee *383 has no job security does not mean that he or she has no right to be free from unlawful discrimination.
In reviewing the record for evidence of such discrimination, it must be kept in mind that "discrimination is rarely so obvious or its practices so overt that recognition of it is instant and conclusive, it being accomplished usually by devious and subtle means" (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 N.Y.2d 176, 183; see Matter of Holland v Edwards, 307 N.Y. 38, 45). Because of the covert nature of discrimination, "[s]tatistics are valuable and often demonstrate more than the testimony of witnesses" in showing that discrimination has occurred (State Div. of Human Rights v Kilian Mfg. Corp., 35 N.Y.2d 201, 210, app dsmd 420 US 915; see Matter of Pace Coll. v Commission on Human Rights of City of N. Y., 38 N.Y.2d 28, 39; McDonnell Douglas Corp. v Green, 411 US 792, 805).
The statistical evidence produced at the division's hearings supports the finding of a pervasive pattern within Community School District No. 1 of removal by the school board of black or Hispanic principals and their replacement by white principals. At the start of the 1973-1974 school year, the district had 3 black persons, 7 persons of Puerto Rican heritage and 11 white persons performing the duties of school principal. Of these, two Puerto Rican, two black and two white persons had been appointed acting principals in 1973 under the hirings later rendered invalid for failure to comply with Special Circular No. 30. These six persons, including Batista and Fletcher, therefore became interim acting principals with no vested property right in their positions. The Community School Board subsequently removed both blacks and both Puerto Ricans from their interim acting principalships. It also removed Fletcher's coprincipal, a white man who was fluent in Spanish. The remaining white interim acting principal was not removed, and all of the vacancies were filled by white persons. Two other minority principals were also replaced by white principals during this same period, and when three white principals left their posts, they too were replaced by white persons. The record thus shows that during the period in which Fletcher and Batista were removed, the Community *384 School Board filled all principalship vacancies with white persons and, with one exception, removed only minority principals from their positions.
This evidence was legally sufficient to sustain a finding that a prima facie case of discrimination had been shown. In an effort to rebut this evidence of discrimination, respondents maintained that Fletcher and Batista were removed because of poor job performance. Although respondents offered some testimony at the division's hearings that was critical of the pair's performances, there was no evidence that such criticism was considered by the Community School Board or played any part in its decisions to remove Fletcher and Batista. Indeed, some of the criticism involved events that occurred after the board removed the pair. In addition, there was testimony that Batista and Fletcher had performed their duties as principals effectively.[*]
At most, the division was faced with conflicting evidence on the claim that the removals were motivated by racial animus. In weighing the evidence regarding respondents' asserted justification for the removals, the Division of Human Rights enjoys wide latitude. And, upon review of the division's determination, it is well established that "where there is room for choice, neither the weight which might be accorded nor the choice which might be made by a court are germane" (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 N.Y.2d 176, 180, supra; see State Div. of Human Rights v Columbia Univ. in City of N. Y., 39 N.Y.2d 612, 616, cert den sub nom. Gilinsky v Columbia Univ., 429 US 1096). The sole question for the court's resolution is the *385 presence or absence of substantial evidence to support the determination under review. The record here provides ample support for the division's rejection of respondents' proffered justification for the removals of Batista and Fletcher.
Accordingly, the orders of the Appellate Division should be reversed, with costs, and the orders of the State Human Rights Appeals Board should be reinstated.
In each case: Order reversed, etc.
NOTES
[*] In addition to arguing that the division's determinations were unsupported by substantial evidence, respondents argue that the proper test is whether illegal discrimination was the sole reason for the removal of the principals. Respondents misperceive the applicable standard. Although the Appellate Division spoke of a complainant's burden of establishing discrimination as the sole reason for the challenged conduct in Matter of State Div. of Human Rights v Bystricky (36 AD2d 278, 280, affd 30 N.Y.2d 322), this court neither adopted such language in its opinion affirming the Appellate Division's order nor employed it in subsequent decisions. To the contrary, this court has held that to overcome a prima facie showing of discrimination in a firing an employer must make "a showing that the employee was terminated for some independently legitimate reason which was neither a pretext for discrimination nor was substantially influenced by impermissible discrimination" (Matter of Pace Coll. v Commission on Human Rights of City of N. Y., 38 N.Y.2d 28, 40).