■ Marisol Espaillat, Appellant, v Breli Originals, Inc., et al., Respondents. [642 NYS2d 875] —Order, Supreme Court, New York County (Harold Tompkins, J.), entered October 28, 1994, which granted defendants' motion to dismiss the complaint in plaintiff's second action alleging statutory employment discrimination, unanimously modified, on the law, to the extent of granting plaintiff leave, within 20 days after service of this decision and order with notice of entry, to serve an amended complaint alleging (i) sexual discrimination under a hostile work environment theory, and (ii) constructive discharge, pursuant to the Federal Equal Employment Opportunity Law, the New York State Human Rights Law and the New York City Civil Rights Law, against the corporate defendant only, eliminating any other causes of action or recitals duplicative of the allegations left standing in the first action complaint, and otherwise affirmed, without costs. Consolidated appeal from an order of the same court and Justice, entered October 28, 1994, which denied plaintiff's motion to amend her complaint in the first action, unanimously dismissed as academic, without costs, in light of the foregoing. *Sua sponte,* in the exercise of discretion and in furtherance of judicial

economy, the two actions (if plaintiff repleads) are ordered consolidated for trial.

The gravamen of plaintiff's second action is, for the reasons set forth herein, to be limited to gender-based discrimination against plaintiff-employee by defendant-employer. In the first action, based primarily upon escalating acts of sexual harassment by Breli's shipping manager culminating in the alleged rape of plaintiff, the IAS Court held that these alleged acts could not render the corporation or its president liable under the theory of respondeat superior. The IAS Court clearly erred in holding that this earlier order, in what was simply a common law tort action, collaterally estopped plaintiff from all recourse to the remedies of a statutory action for gender discrimination (*Capital Tel. Co. v Pattersonville Tel. Co.*, 56 NY2d 11, 18-19; *Lukowsky v Shalit*, 110 AD2d 563, 567).

A "hostile work environment" exists, for purposes of title VII of the Civil Rights Act of 1964 (42 USC § 2000e-2 [a] [1]), when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment (*Harris v Forklift Sys.*, 510 US 17). An employer is liable for a "discriminatorily abusive work environment created by a supervisor if the supervisor uses his actual or apparent authority to further the harassment, or if he was otherwise aided in accomplishing the harassment by the existence of [an] agency relationship" (*Karibian v Columbia Univ.*, 14 F3d 773, 780, *cert denied* 512 US 1213).

Plaintiff has alleged sufficient facts that, if true, could render the corporate defendant liable under a "hostile work environment" theory. Plaintiff alleges in her second action that her shipping department supervisor, over a period of many months, repeatedly made offensive sexual remarks to her, inquired about her sexual preferences and touched her without permission, some of which behavior took place in the presence of other Breli employees and officers. Plaintiff alleged that the supervisor had used his authority over her to direct her attendance at a (nonexistent) computer training program in Boston, where he allegedly raped her and paid for the trip with a business credit card. Plaintiff also maintained that Breli's president tolerated such misbehavior by impliedly warning plaintiff that her job was at stake if she refused to be "more understanding" of her supervisor.

These allegations also support the submission of claims under the New York State Human Rights Law, which makes it

"an unlawful discriminatory practice * * * [f]or an employer * * * because of the * * * sex * * * of any individual * * * to discriminate against such individual in * * * conditions * * * of employment" (Executive Law § 296 [1] [a]). The "virtually identical * * * federal standards for actionable sexual harassment are used in determining claims brought under the New York Human Rights Law" (*Zveiter v Brazilian Natl. Superintendency of Merchant Mar.,* 833 F Supp 1089, 1095).

The allegations also support the submission of claims under Administrative Code of the City of New York § 8-107 (13) (b) (2), which provides that "[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee * * * where * * * the employer knew of the employee's * * * discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action".

Plaintiff is also entitled to replead her cause of action for constructive discharge, to allege that her employer deliberately made her working conditions so intolerable as to force her resignation (*Martin v Citibank,* 762 F2d 212, 221). However, plaintiff has not alleged sufficient facts to sustain a sexual harassment or any other claim against the corporate president individually. Furthermore, since the president was not named as a respondent in plaintiff's administrative complaint before the Equal Employment Opportunity Commission (the Federal agency with primary jurisdiction), there is considerable doubt whether a court can exercise personal jurisdiction over him with respect to claims known to plaintiff when she first filed (*cf., Johnson v Palma,* 931 F2d 203). Nor are there sufficient allegations to sustain a claim against Breli under a *quid pro quo* harassment theory, which requires evidence that a plaintiff's reaction to unwelcome sexual conduct be used as the basis for decisions affecting her compensation or terms of employment (*Karibian v Columbia Univ., supra,* at 777). Plaintiff merely suggested that the raise and promotion she eventually received from Breli may have resulted from her agreement, albeit reluctant, to have drinks with her supervisor one evening after work.

Finally, plaintiff has not adequately alleged that a persistently "racially hostile environment" existed, separate and apart from the gender bias claims. Concur—Milonas, J. P., Ellerin, Wallach, Nardelli and Mazzarelli, JJ.