[727 NYS2d 215]

Myra Vitale, Respondent, v Rosina Food Products Incorporated, Appellant. (Appeal No. 1.)

Fourth Department, June 8, 2001

**APPEARANCES OF COUNSEL**

*Thomas S. Gill,* Buffalo, for appellant.
*Christina A. Agola,* Webster, for respondent.

OPINION OF THE COURT

PIGOTT, JR., P. J.

These appeals arise from separate actions commenced by five women who were formerly employed by defendant, a family-owned business in Erie County that produces meat products. All five plaintiffs worked the evening shift at defendant's plant, from 3:00 to 11:00 P.M. Each plaintiff alleges that she was subjected to sexual harassment at the plant so severe as to create a hostile work environment, and that defendant condoned or acquiesced in the harassment. Following discovery, defendant moved for summary judgment dismissing each complaint or amended complaint on the grounds that, as a matter of law, no hostile work environment existed and that, even if such an environment existed, defendant neither condoned nor acquiesced in any of the alleged acts of sexual harassment.

Supreme Court granted defendant's motions with respect to plaintiffs Cheryl Schmeid, Nancy Northrup and Lynda G. Freier, and denied defendant's motion with respect to plaintiff Myra Vitale. With respect to plaintiff Deborah Aigner, the court granted defendant's motion in part and dismissed her causes of action for sexual harassment, and intentional and negligent infliction of emotional distress, but denied that part of defendant's motion seeking to dismiss her cause of action for discriminatory discharge. For the reasons that follow, we conclude that the court properly denied defendant's motion with respect to Vitale, erred in granting defendant's motions with respect to Schmeid, Northrup and Freier, and erred in granting defendant's motion to the extent that the court dismissed Aigner's first cause of action, for sexual harassment.

I

To establish a prima facie case of sexual harassment, a plaintiff must prove (1) that he or she belongs to a protected group; (2) that he or she was the subject of unwelcome sexual harassment; (3) that the harassment was based on gender; (4) that the harassment affected a term, condition or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take remedial action (*see, Pace v Ogden Servs. Corp.*, 257 AD2d 101, 103).

In analyzing actions under Executive Law § 296 (1) (a), New York courts have adopted principles which define actionable sexual harassment under title VII of the Civil Rights Act of 1964 (42 USC § 2000e *et seq.*; *see*, 42 USC § 2000e-2 [a] [1]; *see generally, Espaillat v Breli Originals*, 227 AD2d 266, 268; *Mat-*

ter of *Father Belle Community Ctr. v New York State Div. of Human Rights*, 221 AD2d 44, 49-50, *lv denied* 89 NY2d 809), but the principles under which liability is imposed upon employers under the Executive Law differ from Federal law (*see, Matter of Father Belle Community Ctr. v New York State Div. of Human Rights, supra,* at 51-54).

An actionable hostile work environment exists when the workplace is permeated with " 'discriminatory intimidation, ridicule, and insult' " that is sufficiently severe or pervasive to alter the terms or conditions of employment (*Harris v Forklift Sys.,* 510 US 17, 21, quoting *Meritor Sav. Bank v Vinson,* 477 US 57, 65). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview" (*Harris v Forklift Sys., supra,* at 21). Finally, whether a work environment is hostile "can be determined only by considering the totality of the circumstances" (*Matter of Father Belle Community Ctr. v New York State Div. of Human Rights, supra,* at 51; *see, Harris v Forklift Sys., supra,* at 22-23).

In order to hold a defendant liable under New York law for alleged pervasive harassment, a plaintiff must prove that the employer " 'had knowledge of and acquiesced in the discriminatory conduct of its employee' " (*Goering v NYNEX Information Resources Co.,* 209 AD2d 834, quoting *Spoon v American Agriculturalist,* 120 AD2d 857, 858; *see also, Matter of Totem Taxi v New York State Human Rights Appeal Bd.,* 65 NY2d 300, 305, *rearg denied* 65 NY2d 1054). "[W]here the complainant is harassed by a low-level supervisor or a coemployee, the complainant is required to establish only that upper-level supervisors had knowledge of the conduct and ignored it; if so, the harassment will be imputed to the corporate employer and will result in imposition of direct liability" (*Matter of Father Belle Community Ctr. v New York State Div. of Human Rights, supra,* at 54). However, defendant may disprove condonation by a showing that it reasonably investigated complaints of discriminatory conduct and took corrective action (*see, Matter of Father Belle Community Ctr. v New York State Div. of Human Rights, supra,* at 53-54).

## II

### MYRA VITALE

We conclude that the court properly denied defendant's motion for summary judgment dismissing Vitale's amended com-

plaint. Vitale was employed by defendant for approximately two months, from August 14, 1994 to October 23, 1994, under the title of Production Associate. A copy of a sexual harassment policy was posted in the employee break room. It defined sexual harassment and stated generally that sexual harassment would not be condoned and that actions "up to termination" would be taken against perpetrators. The policy further stated that "[i]f you feel you have been subject to sexual discrimination or harassment you immediately report it to your supervisor, their superior and/or Senior Management [*sic*]. Such report will be investigated thoroughly."

According to the deposition testimony of Vitale, there were incidents of offensive, obscene communication and unwanted sexually related physical conduct directed at her by three different male employees. She reported those incidents on a number of occasions to a supervisor whose name she thought was "Jim" Corigliano. No action was taken by defendant as a result of her complaints. According to Vitale, after a fellow employee attempted to rape her in the break room, she reported the attempted rape to the same supervisor, who assured her that it was safe to return to work and that he would make sure that the employee did not bother her again. However, when she returned to work, the same employee molested her, and she then left work and did not return. She did not otherwise report the incident. Defendant's Human Resources Director, James M. Corigliano, and his brother, both of whom are sons of the owner, denied that they or anyone at the plant received notification of any complaints from Vitale of sexual harassment or attempted rape. The employee who attempted to rape Vitale was terminated from employment less than one month later for poor attendance.

Defendant failed to meet its initial burden on its motion of establishing as a matter of law that Vitale was not subjected to "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive 'to alter the conditions of [her] employment'" (*Meritor Sav. Bank v Vinson, supra,* at 65, 67). In any event, even assuming that defendant had met its initial burden, we conclude that Vitale raised triable issues of fact whether she was subjected to the requisite hostile or abusive work environment, and whether she informed a supervisor of her complaints, thereby subjecting defendant to direct liability because "upper-level supervisors had knowledge of the conduct" and either acquiesced in or condoned the harassment (*Matter of Father Belle Community Ctr. v New York State Div. of Human Rights, supra,* at 54).

# III

CHERYL SCHMEID

We further conclude that the court erred in granting defendant's motion for summary judgment dismissing Schmeid's amended complaint. Schmeid was employed by defendant on or about May 22, 1995, as a Production Associate. Schmeid left her employment on October 23, 1995. In granting defendant's motion, the court determined that Schmeid had not, as a matter of law, been subjected to a hostile work environment and that Schmeid had failed to take the necessary actions to take advantage of defendant's sexual harassment complaint procedure. That was error.

In determining that defendant was entitled to summary judgment, the court applied in this and in the following cases an affirmative defense available to employers set forth in *Faragher v City of Boca Raton* (524 US 775) and *Burlington Indus. v Ellerth* (524 US 742). That defense allows an employer, under certain circumstances, to avoid vicarious liability to an employee subjected to a hostile work environment created by a supervisor with immediate "or successively higher" authority over the employee (*Burlington Indus. v Ellerth, supra,* at 745). The defense is comprised of two necessary elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise" (*Faragher v City of Boca Raton, supra,* at 807).

Here, the court placed the burden on all plaintiffs (except Vitale) to prove that each mitigated her damages by taking advantage of preventive or corrective opportunities (i.e., the alleged company policy for reporting complaints of sexual harassment).

We conclude that the court erred in applying the affirmative defense and imposing a burden of proof on the four plaintiffs at issue where, as here, defendant failed to plead that defense (*see,* CPLR 3018 [b]; *see also, Cheney v J.C. Penney Co.,* 270 AD2d 855, 856; *Mendez v Steen Trucking,* 254 AD2d 715, 716). Had defendant pleaded such a defense, the burden would have been on defendant to establish it, not on the four plaintiffs at issue to disprove it in the first instance. For this reason, we need not consider whether the defense articulated in *Faragher v City of Boca Raton (supra)* and *Burlington Indus. v Ellerth*

(*supra*) is applicable to cases under the Executive Law (*cf., Randall v Tod-Nik Audiology,* 270 AD2d 38). The same analysis also applies with respect to Northrup, Freier, and Aigner.

When viewed in the light most favorable to Schmeid, the nonmoving party (*see, Goldstein v County of Monroe,* 77 AD2d 232, 236), the evidence indicates that she was subjected to offensive touching and obscene communications on many occasions while she was still a temporary worker. After she was hired permanently, she met with the Human Resources Director (who, as previously noted, was a son of the owner); he informed her that he had been reluctant to hire her because she had complained of sexual harassment. The plant manager advised her not to wear perfume or makeup, and not to talk to anyone on the job. Later, she was taken from her work on the production line more than once to answer allegedly fabricated complaints from male employees who reported that she had sexually harassed them. Numerous male employees on her shift engaged in horseplay against her that she perceived as hostile. That evidence raises an issue of fact whether the harassment was so pervasive as to alter the terms or conditions of Schmeid's employment (*see, Harris v Forklift Sys., supra,* 510 US, at 21-23; *Matter of Father Belle Community Ctr. v New York State Div. of Human Rights, supra,* at 50-51).

Further, Schmeid raised triable issues of fact whether defendant ignored most of her complaints and whether its responses, with respect to the complaints to which it did respond, were corrective or served only to worsen Schmeid's situation (*see, Matter of Father Belle Community Ctr. v New York State Div. of Human Rights, supra,* at 53-54). Here, "[t]he divergent characterizations of the complaints by [Schmeid] and defendant merely serve 'to create an arguable issue of fact' * * * whether defendant, through its supervisory personnel, was aware of [the co-employee's] sexual harassment of [Schmeid] and failed to take corrective action" (*Goering v NYNEX Information Resources Co., supra,* 209 AD2d, at 835; *see also, Spoon v American Agriculturalist, supra,* 120 AD2d, at 859).

## IV

### NANCY NORTHRUP

Northrup worked for defendant as a Production Associate from September 9, 1995 until she left her employment on August 1, 1996. The evidence reveals that her experience in defendant's plant was different from that of Schmeid only in

the details. The court's decision in this case mirrored that in Schmeid's case.

We conclude that defendant failed to establish its entitlement to judgment as a matter of law. Defendant's own submissions on the motion raise an issue of fact whether the harassment was so pervasive as to alter the terms and conditions of Northrup's employment (*see, Distasio v Perkin Elmer Corp.*, 157 F3d 55, 62-63). Although defendant attempted to disprove condonation by submitting evidence detailing incidents involving Northrup where, upon having been informed of Northrup's complaints, management took action in response (*see generally, Matter of Totem Taxi v New York State Human Rights Appeal Bd., supra,* 65 NY2d, at 305), Northrup raised an issue of fact whether many other incidents of harassment were witnessed by or reported to her supervisor without any investigation or corrective action (*see, Goering v NYNEX Information Resources Co., supra,* at 834-835; *see generally, Matter of Father Belle Community Ctr. v New York State Div. of Human Rights, supra*, at 53-54).

## V

### LYNDA G. FREIER

Freier was hired by defendant on July 21, 1994, as a Production Associate. Freier testified at her deposition to daily sexual harassment that she endured at defendant's plant, before she left her employment on August 9, 1995. The court determined that Freier was subject to a hostile work environment as a matter of law, and defendant does not contest that determination. The court further determined, however, that Freier had failed to prove that she took advantage of defendant's sexual harassment reporting procedures by registering all of her complaints with upper management. The court determined that, when she did report incidents, they were investigated and dealt with by written warnings and the threat of unpaid suspension and termination for further infractions.

We conclude that the court erred in granting defendant's motion for summary judgment dismissing Freier's amended complaint. According to the deposition testimony of Freier, she made many complaints to her production supervisor that were ignored. Further, Freier has raised a triable issue of fact whether the corrective action taken by defendant may be construed as mere window dressing and therefore ineffective (*see, Goering v NYNEX Information Resources Co., supra,* at

834-835; *Spoon v American Agriculturalist, supra,* at 859), and thus whether defendant, through its supervisory personnel, was aware of the co-employees' sexual harassment of Freier and failed to take the requisite corrective action (*see, Goering v NYNEX Information Resources Co., supra,* at 834-835).

## VI

### DEBORAH AIGNER

Aigner worked at defendant's plant from September 2, 1995 to December 3, 1996, as a Production Associate. Aigner alleges that, while she was employed by defendant, she was harassed by six different male employees and the wife of one of the men about whom she complained. On three occasions, she met with management about her complaints. On November 26, 1996, the Human Resources Director prepared a brief memorandum allegedly setting forth two of Aigner's complaints. Aigner testified at her deposition that she refused to sign it because she believed that the harassment would not stop. The Human Resources Director informed Aigner that she would be terminated if she did not sign the memorandum, and she was terminated because she continued to refuse to sign it.

For the same reasons set forth in the Schmeid and Northrup cases, we conclude that the court erred in dismissing Aigner's first cause of action for sexual harassment. In opposition to the motion, Aigner submitted two transcripts of secretly taped telephone conversations between Aigner and defendant's Human Resources Director. Defendant contends for the first time on appeal that those transcripts are inadmissible. Even without those transcripts, however, we conclude that Aigner raised issues of fact whether defendant had knowledge of complaints by her and, if so, whether defendant reasonably investigated those complaints and took corrective action (*see, Matter of Father Belle Community Ctr. v New York State Div. of Human Rights, supra,* at 53-54; *Goering v NYNEX Information Resources Co., supra,* at 834-835). Aigner testified at her deposition about months of complaints of sexual harassment to her production supervisors with no response by defendant other than to transfer her to a different worksite in the spring of 1996, where harassment by other employees continued.

We conclude, however, that the court properly denied that part of defendant's motion seeking summary judgment dismissing Aigner's cause of action for discriminatory or retaliatory discharge (*see,* Executive Law § 296 [1] [e]). "In order to establish a prima facie case of discriminatory discharge, the plaintiff

must show (1) that [s]he belongs to a protected class; (2) that [s]he was performing h[er] duties satisfactorily; (3) that [s]he was discharged; and (4) that h[er] discharge occurred in circumstances giving rise to an inference of discrimination on the basis of h[er] membership in that class" (*Chambers v TRM Copy Ctrs. Corp.*, 43 F3d 29, 37). We conclude that "[s]ummary judgment was properly denied with respect to [Aigner]'s retaliatory discharge claim since defendant[ ] failed to meet [its] burden of providing admissible proof of a 'legitimate, independent, nondiscriminatory' reason for discharging [Aigner]" (*Sier v Jacobs Persinger & Parker*, 236 AD2d 309).

Because Aigner failed to brief before this Court the propriety of the dismissal of her causes of action for intentional and negligent infliction of emotional distress, any issue with respect to the propriety of that dismissal is deemed abandoned (*see, Ciesinski v Town of Aurora*, 202 AD2d 984).

## VII

Accordingly, we conclude that the amended order in appeal No. 1 should be affirmed; that the amended orders in appeal Nos. 2, 3 and 4 should be reversed, defendant's motions denied and the amended complaints in those actions reinstated; and that the amended order in appeal No. 5 should be modified by denying that part of defendant's motion seeking dismissal of Aigner's first cause of action for sexual harassment and by reinstating that cause of action.

GREEN, HAYES, KEHOE and BURNS, JJ., concur.

Amended order unanimously affirmed, without costs.