[826 NYS2d 122]

# In the Matter of STATE DIVISION OF HUMAN RIGHTS, Petitioner, v NELSON M. STOUTE, Respondent.

Second Department, November 28, 2006

## APPEARANCES OF COUNSEL

*Gina M. Lopez Summa*, Bronx (*Michael K. Swirsky* of counsel), for petitioner.

## OPINION OF THE COURT

MILLER, J.

The principal issue in this case is whether an award can be made pursuant to Executive Law § 296 based on same-sex sexual harassment by a landlord against a tenant in the rental of housing accommodations. Upon our review of the record (*see Matter of State Div. of Human Rights v Bystricky*, 30 NY2d 322 [1972]), my colleagues and I conclude in the affirmative. Further, on the record presented (*id.*), substantial evidence supports the determination of the petitioner, the State Division of Human Rights (hereinafter the Division), that the respondent landlord, Nelson M. Stoute, violated the Human Rights Law by continually sexually harassing the complainant tenant, Cheriko A. Boone, thereby creating a hostile housing environment leading to the tenant's early surrender of his lease. In addition, the Division's determination that Stoute should pay Boone the sum of $10,000 as compensation for mental anguish is supported by substantial evidence, is reasonably related to the wrongdoing, and is comparable to previous awards for analogous injuries. Accordingly, the Division's petition to enforce the award is granted.

### I

Boone signed a one-year lease, beginning in July 2000, to rent a ground-floor, two-bedroom apartment in a brownstone building located at 55 Halsey Street, in Brooklyn. Stoute occupied an apartment on the fourth floor. There were three more units in the building. Boone had a female roommate during the period of this lease. In August 2001 Boone renewed his tenancy, and signed a one-year lease which was to terminate on July 31, 2002. During the second year, Boone took in a new roommate, who was male.

Thereafter, according to Boone's allegations, Stoute began behaving in a manner that created a sexually hostile environment, allegedly due to Boone's lack of interest in having a sexual relationship with Stoute. Accordingly, in a sworn complaint dated December 19, 2001, Boone charged Stoute with discrimination in housing on the basis of sex, in violation of article 15 of

the New York State Executive Law (hereinafter referred to as the Human Rights Law). The complaint alleged that Stoute had made "sexually offensive comments and gestures" to both Boone and his house guests that intimidated him and interfered with his tenancy. Boone alleged that as recently as the day before the date of the complaint, for example, Stoute made "sexual comments" to one of Boone's house guests as the latter was entering the building at 55 Halsey Street.

A notice of an administrative hearing on the complaint, dated June 21, 2002, was sent by mail to Boone and Stoute. Among other things, the notice scheduled a preliminary conference for November 25, 2002, and listed hearing dates of November 25, 26 and 27, 2002. A copy of Boone's complaint was annexed. The notice directed Stoute to serve and file a sworn, written answer to the complaint at least two business days prior to the preliminary conference. A failure to answer, the notice further stated, would be deemed an admission of the complaint's allegations, the Administrative Law Judge (hereinafter the ALJ) would note the default at the upcoming hearing, and the hearing would proceed on the evidence in support of the complaint. The notice also contained the procedure required for requesting an adjournment of the hearing.

Stoute did not answer Boone's complaint, and did not appear for the preliminary conference. Boone did appear. Accordingly, on that same date, the matter proceeded to a default hearing before the ALJ. The ALJ first spread upon the record the efforts that had been made to contact Stoute, which included not only service of the notice of hearing, but also numerous telephone calls to both his home and cell phone.

In relevant part, Boone testified that he started having problems with Stoute during the second year of his tenancy. He testified in detail about his landlord's conduct during that year, and the housing environment created as a result. Here, as in *Oncale v Sundowner Offshore Services, Inc.* (523 US 75, 76-77 [1998]), the "precise details" of Stoute's conduct are irrelevant to the legal point we must decide; therefore, "in the interest of both brevity and dignity we shall describe them only generally."

Boone testified that Stoute spied on him through his apartment window (which was curtained) while Boone was having sex. Boone filed police reports of those incidents. Stoute also entered Boone's apartment, and his bedroom, without prior notice to Boone or his roommate, when the two were not there. Stoute made inappropriate, sexually oriented comments to

Boone, and to his friends when they visited Boone at his home. Stoute had conversations with Boone's friends, who passed on their substance to Boone. For example, Stoute told one friend that he (Stoute) was interested in Boone and wanted to have some type of sexual interaction with him. Stoute also took photographs of Boone and his friends as they arrived at or left Boone's home, causing Boone to file yet another police report.

Boone believed Stoute was following him under the "guise" of walking his dog, because he noticed that Stoute went outside every time Boone left his home, or every time Stoute knew that Boone had someone coming over. On January 15, 2002, Boone filed a police report, in which he alleged, inter alia, that Stoute repeatedly followed him. He also alleged in the latter report that Stoute had threatened him with physical force. The latter allegation was based on a report Boone received from another one of his friends, who told Boone that Stoute said he (Stoute) sometimes felt like "beating [Boone's] . . . head in." Boone felt threatened, and at that point, he did not know what would be the limit of Stoute's behavior.

Boone also found Stoute on the stairs outside of Boone's room at 11:00 p.m. or 12:00 a.m. one night. Boone had a guest at the time, and he concluded that Stoute was eavesdropping, because Boone felt there was no other reason for Stoute to be there at that hour. Stoute also knew of conversations Boone had with others that Boone thought had been private. On another occasion, at night, Boone caught Stoute peering into Boone's apartment through a peephole in the apartment's door.

Based on Stoute's sexually oriented remarks, Stoute's behavior at Boone's window, and information relayed to Boone from his friends, Boone believed that Stoute wanted to have a sexual relationship with him. In addition, Stoute said that he had friends who were interested in Boone, and asked if Boone was similarly interested; Boone told Stoute he was not.

Boone tried to resolve his problems with Stoute through mediation, but was unsuccessful, as Stoute refused to participate after two sessions.

Boone and his roommate decided to leave their apartment two months prior to the expiration of their lease. Boone wanted to move "as soon as possible" because he felt threatened. He stated: "I felt like I was in prison, like I couldn't have guests. I couldn't do anything without Mr. Stoute monitoring what I was doing. And, you know, I couldn't live like that anymore." Boone further testified as follows:

"Up until January or February [2002], I was a wreck. I mean, I had to take time off of work to go to civil court, criminal court, to figure out what my options were, coming into the [D]ivision and filing that, so I had to take a lot of time off from work. Just coming home, always felt like I had to look over my shoulder when I was coming home because I didn't know if Mr. Stoute would be there . . . inside the building . . . I just didn't know what he would do next and so I was scared."

When asked if he felt comfortable in the apartment, Boone testified:

"No, not at all. I mean, I felt comfortable knowing that I had some amount of control around knowing if he had been in my apartment or not when I wasn't there but, other than that, I didn't feel comfortable. I felt like he was monitoring even my phone conversations or somehow monitoring what I was doing inside the apartment."

Two of Boone's friends also testified, corroborating various aspects of Boone's testimony.

## II

On April 4, 2003, the ALJ issued a recommended findings of fact, decision, opinion, and order (hereinafter the recommended findings). After briefly summarizing the testimony and exhibits presented at the hearing, the ALJ concluded, in pertinent part, as follows:

"[Stoute's] actions of spying on [Boone] and attempting to form a sexual relationship with him were actions that prevented [Boone] from the quiet enjoyment of his home. The testimony of [Boone] and his witnesses convincingly established that against [Boone's] wish [Stoute] continued to harass him in the hope of gaining a sexual relationship with him. Therefore, under section 296.5 of the Human Rights Law, [Stoute] discriminated against [Boone] in the terms of his housing accommodation because of [Boone's] sex."

Based on that conclusion of law, the ALJ recommended that Stoute pay Boone the sum of $7,500 in compensatory damages to redress the mental anguish Boone suffered.

The recommended findings were served on Stoute, along with a notice informing him that he could file objections, which he

did. Among other things, Stoute claimed that Boone was a "flagrant exhibitionist," who brought various people into the building, leaving them to "roam freely" about, to the concern of other tenants. Stoute stated that Boone's bedroom was located at the front of the building, at ground level, and that Boone engaged in "sexual activities in full view" of people passing by on the street. He further claimed to be ignorant of Boone's behavior, at first, but learned of it from "concerned people" in the community. When Stoute confronted Boone about the allegations, Stoute stated that Boone reacted with resentment and refused to cover his windows adequately. Stoute claimed that he had a duty to uphold security at the building, and that Boone was in violation of his lease, which Stoute nevertheless renewed. Stoute stated that the two attended mediation sessions to attempt to work out their differences, but were unsuccessful. He called Boone "the epitome of dishonesty," and denied all of Boone's allegations, as well as those of Boone's witnesses, labeling them an attempt to extort money from him. Stoute denied ever having a sexual interest in Boone.

After summarizing the testimony and exhibits produced at the hearing, the Commissioner of the Division (hereinafter the Commissioner) concluded that the Human Rights Law prohibits the owner of a housing accommodation from discriminating against any person, because of sex, in the terms and conditions of the rental of such accommodation and that same-sex sexual harassment is actionable under the Human Rights Law. Here, Boone demonstrated that Stoute sexually harassed him in violation of New York law. The evidence demonstrated that Stoute's actions were "severe and pervasive," and affected Boone's ability to use and enjoy his home. The Commissioner determined that Boone suffered mental anguish as a result of Stoute's discriminatory actions, and that an award of compensatory damages in the sum of $10,000 would effectuate the purposes of the Human Rights Law, and was reasonably related to Stoute's discriminatory conduct. Accordingly, the Division ordered Stoute to cease and desist from discriminating on the basis of sex in the rental of housing accommodations, and to pay the $10,000 award, with interest at nine percent per year from the date of the order, within 30 days.

Stoute did not seek judicial review of the award and failed to pay it. Accordingly, in December 2004, the Division commenced this proceeding by filing a notice of petition and petition in the Supreme Court, Kings County, pursuant to Executive Law § 298,

seeking to enforce its award and to direct Stoute to pay the sum of $10,000, plus interest at nine percent from November 28, 2003. The Supreme Court transferred the proceeding to this Court pursuant to Executive Law § 298 and 22 NYCRR 202.57 (c).

## III

Under Executive Law § 296 (1) (a)—as is true under its federal analogue, title VII of the Civil Rights Act of 1964 (42 USC § 2000e-2 [a] [1] [hereinafter title VII])—sexual harassment in the workplace is a form of discrimination that is actionable, so long as the conduct complained of is sufficiently severe and pervasive as to alter the conditions of employment. As the United States Supreme Court noted in *Oncale v Sundowner Offshore Services, Inc.* (523 US 75, 81 [1998]), the law prohibits behavior that is objectively and subjectively offensive, such that a reasonable person would find the conduct hostile or abusive, and such that the plaintiff did, in fact, perceive it be so (*see Harris v Forklift Systems, Inc.,* 510 US 17, 21 [1993]; *Meritor Savings Bank, FSB v Vinson,* 477 US 57, 67 [1986]; *Vitale v Rosina Food Prods.,* 283 AD2d 141, 142-143 [2001]; *San Juan v Leach,* 278 AD2d 299, 299-300 [2000]; *Mauro v Orville,* 259 AD2d 89, 91 [1999]; *Espaillat v Breli Originals,* 227 AD2d 266, 267-268 [1996]; *Matter of Father Belle Community Ctr. v New York State Div. of Human Rights,* 221 AD2d 44, 50-51 [1996]).

The law forbids not only opposite-sex sexual harassment in the workplace, but same-sex sexual harassment as well (*see Oncale v Sundowner Offshore Services, Inc., supra* [construing title VII]; *Matter of State Div. of Human Rights v Dom's Wholesale & Retail Ctr., Inc.,* 18 AD3d 335, 336 [2005] [construing New York Executive Law]). As the Supreme Court observed in *Oncale,* "[b]ecause of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of [that] group" (*Oncale, supra* at 78 [citation and internal quotation marks omitted]).

The issue is whether the Human Rights Law forbids same-sex sexual harassment in the context of the rental of housing accommodations. For the reasons discussed below, it does, and the evidence supports the conclusion that Stoute violated that law in his treatment of Boone.

Executive Law § 296 (5) (a) (2) provides, in pertinent part, as follows:

"It shall be an unlawful discriminatory practice for the owner, . . . managing agent of, or other person having the right to sell, rent or lease a housing accommodation, . . . or any agent or employee thereof . . . [t]o discriminate against any person because of . . . sex . . . in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith."

The language of New York's statute is similar to that of title VIII of the Civil Rights Act of 1968, the federal Fair Housing Act—specifically, 42 USC § 3604 (b), which prohibits, inter alia, "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . sex."

Federal courts have held that sexual harassment in the housing context can violate the Fair Housing Act (42 USC § 3604 [b]) (*see e.g. Krueger v Cuomo,* 115 F3d 487 [7th Cir 1997]; *DiCenso v Cisneros,* 96 F3d 1004 [7th Cir 1996]; *Honce v Vigil,* 1 F3d 1085 [10th Cir 1993]; *Rich v Lubin,* 2004 WL 1124662, 2004 US Dist LEXIS 9091 [SD NY 2004]; *Richards v Bono,* 2005 WL 1065141, 2005 US Dist LEXIS 43585 [MD Fla 2005]).

Analogizing to title VII, federal courts have recognized two types of actionable sexual discrimination under the Fair Housing Act. The first type is quid pro quo discrimination, which arises when the terms and conditions of a rental, including continued occupancy, rent and the furnishing of services such as repairs, are conditioned upon compliance with the landlord's sexual demands (*see DiCenso v Cisneros, supra; Richards v Bono, supra*). The second type arises when the landlord subjects the tenant to a sexually hostile housing environment, by engaging in severe and pervasive sexually offensive behavior (*see Honce v Vigil,* 1 F3d 1085 [10th Cir 1993]; *Richards v Bono, supra*). As to the latter situation, courts have held that "isolated" and "innocuous" incidents do not support a finding of sexual harassment (*see DiCenso v Cisneros, supra*).

The same principles ought to apply under Executive Law § 296 (5) (a) (2) because, just as in the employment context, courts in this state have looked to title VII for guidance in interpreting Executive Law § 296 (1) (a) (*see Ferrante v American Lung Assn.,* 90 NY2d 623, 629 [1997] [in age discrimination in employment case, Court stated that standards for recovery

under section 296 of the Executive Law are in accord with federal standards under title VII]; *Vitale v Rosina Food Prods., supra* [in sexual harassment in employment case, Court stated that in analyzing actions under the Executive Law, courts have adopted principles which define actionable sexual harassment under title VII]; *Espaillat v Breli Originals, supra* at 268 [in sexual harassment in employment case, Court stated that virtually identical federal standards for actionable sexual harassment are used in determining claims under the Human Rights Law]).

Here, substantial evidence supports the Division's determination that Stoute sexually harassed the complainant, and in doing so violated the Human Rights Law. The Division relies on the hostile housing environment theory, and the record supports its determination that Stoute created such an environment with respect to Boone.

To prevail on a hostile housing environment theory, it must be shown that (1) the complainant is a member of a protected group, (2) he or she was subjected to unwelcome and extensive sexual harassment, in the form of sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, which were not solicited or desired by the complainant, and which were viewed as undesirable or offensive, (3) such harassment was based on the complainant's sex, (4) such harassment affected a term, condition, or privilege of housing, and (5) if vicarious liability is claimed, the complainant must show that the owner knew or should have known about the harassment and failed to remedy the situation promptly (*see Williams v Poretsky Mgt., Inc.,* 955 F Supp 490, 496 and n 1 [D Md 1996] [construing the Fair Housing Act (42 USC § 3604 [b])]; *see also Szkoda v Illinois Human Rights Commn.,* 302 Ill App 3d 532, 540, 706 NE2d 962, 969 [1998] [interpreting Illinois Human Rights Law in parallel with federal court interpretation of the Fair Housing Act (42 USC § 3604 [b])]; *Vitale v Rosina Food Prods., supra* at 142 [setting out analogous elements under Executive Law in hostile work environment sexual harassment case]; *Yukoweic v International Bus. Machs.,* 228 AD2d 775, 776 [1996]).

With respect to the first element, Boone, as a male, "belongs to a protected group for purposes of a claim based on gender discrimination" (*Yukoweic v International Bus. Machs., supra* at 776-777). The remaining elements of the claim (save for the vicarious liability element, which is not involved here) are easily

met. Substantial evidence in the record, consisting largely of Boone's unrebutted testimony at the hearing, demonstrates that Stoute engaged in a continuous course of unwelcome, sexually-offensive behavior, directed at Boone, which altered the terms of his rental.

## IV

As to the propriety of the $10,000 compensatory award, the scope of this Court's review is limited. The award must be upheld if it is reasonably related to the wrongdoing, is supported by substantial evidence, and is similar to comparable awards for similar injuries (*see Matter of New York City Tr. Auth. v State Div. of Human Rights,* 78 NY2d 207, 218-219 [1991]). Boone testified regarding his mental anguish, and his testimony was corroborated by one of his friends. Accordingly, the award is supported by substantial evidence, and is reasonably related to the wrongdoing (*see Matter of State Div. of Human Rights v Muia,* 176 AD2d 1142 [1991] [Division awarded $25,000 to complainant who alleged that respondent discriminated against her on the basis of race in the leasing of housing accommodations; complainant testified that as a result of discrimination, she suffered distress, lost sleep, and was nauseated; complainant's friend corroborated that testimony; on review, court found award substantially related to wrongdoing and supported by substantial evidence]; *Szpilzinger v New York State Div. of Human Rights,* 160 AD2d 196 [1990]).

While this is a case of first impression under Executive Law article 15 with regard to sexual harassment in the housing context, which makes precise review of comparable New York State awards impossible, it should be noted that in 1997 the United States Court of Appeals for the Seventh Circuit upheld a $20,000 award for emotional distress in a sexual harassment in a federal housing case (*see Krueger v Cuomo,* 115 F3d 487 [7th Cir 1997]) (that award was in *addition* to a $10,000 civil fine, an award of $622 for alternative housing costs, and an award of $2,000 to compensate the complainant for the inconvenience caused by her loss of the subject apartment). As far as New York State authorities are concerned, it is appropriate to use as a basis for comparison cases involving discrimination in housing on the basis of race. In doing so, the award does not seem in any way punitive, and in fact is perfectly reasonable. In *Matter of Matteo v New York State Div. of Human Rights* (306 AD2d 484 [2003]), the Division determined that a landlord discrimi-

nated on the basis of race and color in the leasing of housing accommodations, and awarded the prospective tenants (a husband and wife) $7,500 each in compensatory damages for mental anguish and humiliation, and $10,000 each as punitive damages, plus expenses. This Court upheld that award. Here, there was no punitive component to the award at all, and the compensatory component is comparable to the $7,500 award in *Matteo* (*see also State Div. of Human Rights v Dynasty Hotel,* 222 AD2d 263 [1995] [hotel discriminated against complainant on the basis of race; Court reduced Division's $20,000 award to $7,500]).

In sum, the compensatory award of $10,000 is entirely proper, and should not be disturbed.

## V

The petition for enforcement is granted, the determination is confirmed, and Stoute is directed to pay Boone the sum of $10,000, plus interest at the rate of nine percent per year, from November 28, 2003.

FLORIO, J.P., ADAMS and SKELOS, JJ., concur.

Adjudged that the petition is granted, with costs, the determination is confirmed, and the respondent is directed to pay Cheriko A. Boone the sum of $10,000, plus interest at the rate of nine percent per year from November 28, 2003.