*415 OPINION OF THE COURT
Simons, J.
Complainant Pamela Easton is a black woman employed in the calendaring unit of petitioner’s law department and, if the qualifications listed in petitioner’s newspaper advertisement for applicants control, she was qualified for promotion to supervisor of that section: she is a high school graduate, has extensive experience in calendaring and, as her record indicates, has supervisory ability. Notwithstanding these qualifications, complainant was passed over for two promotions given to white men who petitioner claimed were better qualified but who arguably did not satisfy the experience requirements. Accordingly, she filed a complaint charging petitioner with a discriminatory practice. After her complaint was sustained by the Commissioner, petitioner instituted this proceeding challenging his order. A divided Appellate Division annulled the determination and vacated the order. The questions presented are whether (1) the Commissioner’s finding of discrimination is supported by substantial evidence, (2) the complaint was timely filed and (3) the relief ordered is sustainable.
Complainant began work as a clerk B, a nonmanagerial position, in the calendar unit of petitioner Consolidated Edison’s law department in 1975. At the time the unit consisted of five employees: a supervisor, one clerk A and three clerk B’s. It was subsequently expanded to include an assistant supervisor. During the 10 years that complainant was employed there she was the only black and the only woman in the calendaring unit. Although her work consistently met high standards, she did not receive a promotion to clerk A until 1980. Thereafter, in addition to her regular duties as the senior clerk in the calendar department, complainant aided the assistant calendar supervisor.
In 1978, Charles Gallagher, a white male, was assigned to the calendar unit as a clerk B and trained by complainant. Within a year, he was promoted to clerk A. In February 1982 complainant took maternity leave. When she returned the following August, she learned for the first time that the assistant calendar supervisor had resigned and that Gallagher, despite his lack of prior supervisory experience and his limited time in the unit, had been promoted to the position. In January 1983, Gallagher was again promoted, from assistant calendar supervisor to calendar supervisor. Complainant was not informed of the availability of either position, nor was she *416 considered for them or given the opportunity to apply for them.
Following Gallagher’s promotion to supervisor, petitioner decided to fill the vacant assistant calendar supervisor’s position. It approached several white employees but none expressed an interest in the position and so it advertised for candidates in the newspaper. The advertisement stated that candidates had to be high school graduates, possess extensive experience in calendaring and have supervisory ability. It does not appear from the record that petitioner identified any other qualifications for the position before filling it. There were no responses to the advertisement and the position remained vacant for several weeks. During that time Ms. Easton spoke to her shop steward about filing a complaint charging petitioner with discrimination in its promotion practices. Petitioner subsequently approached her and two white male employees to determine if they were interested in the position. Complainant met the objective qualifications listed in the newspaper advertisement and she claimed supervisory ability because she had obtained the second highest possible score on the management skills tests administered by petitioner and had performed many of the duties of assistant supervisor in the transition periods between 1980 and 1983. Nevertheless, after a pro forma interview of complainant, petitioner appointed Daniel Mercado to the position. Mercado is identified as a white hispanic employed outside the calendar unit.
Complainant filed a complaint with respondent New York State Division of Human Rights alleging that petitioner had engaged in unlawful discriminatory practices by denying her promotion to a managerial position based on her sex and race. The claims related to the openings filled by Gallagher in June of 1982 and by Mercado in 1983. Respondent found probable cause and recommended a public hearing pursuant to Executive Law § 297. After hearings the Administrative Law Judge found for petitioner but on review the Commissioner of Human Rights reversed that decision. He found that the "[practice of promoting white males in available supervision positions in the Calendar Unit has been clearly established [by petitioner’s] method of approaching certain employees and not others, despite whatever qualifications they possessed”. He noted that petitioner lacked a coherent procedure of posting job vacancies, listing qualifications or describing the application process and that this practice "appears to be standard *417 operating procedure which has, and continues to have an adverse impact on Complainant.” The Commissioner determined that petitioner had passed over complainant for promotion to these supervisory positions because of her sex and color and ordered it to offer her a managerial position similar to that denied to her with back pay and benefits, to circulate an announcement to its supervisory personnel that race and sex discrimination were unlawful, and to pay damages in the sum of $10,000 for hurt, humiliation and mental anguish.
A majority of Justices at the Appellate Division, recognizing that complainant had established a prima facie case of discrimination, found that petitioner had rebutted the claim by evidence that the successful candidates had higher qualifications. Two Judges dissented, believing petitioner had denied complainant the opportunity for promotion or promotion to a supervisory position because of her sex and color.
We agree with the dissenters at the Appellate Division that there is substantial evidence to support the Commissioner’s determination. The record indicates that complainant, because of her race and sex, was never given more than perfunctory consideration for management level positions within the calendar unit while white male employees with less experience were considered and promoted. Accordingly, we conclude there should be a reversal and the Commissioner’s order should be reinstated.
I
The determination of the State Commissioner of Human Rights must be confirmed if it is supported by substantial evidence (300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 179-180). Substantial evidence "means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact” (id., at 180). It exists when the proof is " 'so substantial that from it an inference of the existence of the fact found may be drawn reasonably.’ ” (Matter of Holland v Edwards, 307 NY 38, 44, quoting Matter of Stork Rest. v Boland, 282 NY 256, 273.) Although a contrary decision may be reasonable and also sustainable, a reviewing court may not substitute its judgment for that of the Commissioner if his is supported by substantial evidence (see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra, at 179-180; Matter of Imperial Diner v State Human Rights Appeal Bd., 52 NY2d 72, 79; Matter of *418 Mize v State Div. of Human Rights, 33 NY2d 53, 56). Complainant has satisfied that standard here.
There is evidence in the record that complainant, acknowledged by petitioner to be a competent employee, received her first promotion to clerk A only after five years’ employment. In contrast, Gallagher, who was trained by complainant, was promoted to clerk A before complainant was and after he had worked less than a year in the calendar unit. Moreover, even though complainant had assisted her supervisor in his responsibilities before Gallagher was promoted, she was not notified when he retired and the position became vacant. Instead, Gallagher was hand picked as his replacement. When Gallagher was again promoted, from assistant calendar supervisor to calendar supervisor, petitioner did not announce that it planned to fill the assistant supervisor’s vacancy. Rather, it approached several white employees, all of whom were either employed in other departments or less senior than complainant. When these contacts failed to produce a candidate for the job, petitioner advertised for applicants outside the company, without considering complainant, and when the advertisements failed to generate any applications, petitioner finally approached complainant. She received only superficial consideration, however, and the position was given to Mercado. In short, complainant, who met the listed qualifications for the job, was denied advancement twice without ever receiving serious consideration and others, who did not, were promoted ahead of her.
Petitioner attempts to rebut this prima facie case of discrimination by asserting that it had "legitimate, independent and nondiscriminatory reasons to support” its employment decision (Matter of Miller Brewing Co. v State Div. of Human Rights, 66 NY2d 937, 938-939). It contends that the Commissioner’s determination is not supported by substantial evidence because in each instance the successful candidates possessed credentials which merited greater recognition. Thus, petitioner isolates qualifications such as the successful applicants’ college training as the basis for its choices and ignores their inexperience, even though a college education was not listed as a qualification for the job and petitioner had solicited other candidates who did not possess college degrees. For example, complainant, who had worked in the unit substantially longer than other applicants, was not even considered for the position in 1982. Instead, Gallagher, who had worked *419 there only a limited time, had no supervisory experience, and who complainant had trained, was promoted. When the position again opened in 1983, petitioner was not considered until she complained to her union representative and, although experience was again a priority, Mercado was promoted though he had worked for the company less than three years and had worked in the calendar section only two weeks during his training rotation. Indeed, Mercado had been rejected for the assistant supervisor’s position 15 months earlier because he lacked the knowledge required to perform the job. That deficiency did not prevent him from being preferred over complainant in 1983, however. As with the promotion of Gallagher, complainant’s extensive experience was trumped by qualities not required for the position.
Based on this showing, there is substantial evidence in the record that complainant had been the victim of race and sex discrimination and the Commissioner’s finding of discrimination should be reinstated.
II
Next, petitioner asserts the complaint was untimely. The Human Rights Law requires that a complaint be filed within one year after the alleged unlawful discriminatory practice (Executive Law § 297 [5]) and petitioner contends that any complaint relating to the promotion of Gallagher to assistant supervisor was time barred. Gallagher was promoted to assistant supervisor in June of 1982 while complainant was on maternity leave. Shortly thereafter, complainant received a telephone call asking her to return to work early to assist during a personnel shortage in the calendar unit. Complainant returned on August 23, 1982 and learned, for the first time, that Gallagher had been promoted to assistant calendar supervisor. She filed her complaint within one year of acquiring that knowledge, on August 12, 1983, and therefore the complaint was not time barred as to the 1982 discriminatory action (see, Matter of Board of Educ. v State Div. of Human Rights [Burns], 56 NY2d 257, 262 [Statute of Limitations begins to run from the time complainant learned of act in April 1978]; Matter of Queensborough Community Coll. v State Human Rights Appeal Bd., 41 NY2d 926 [Statute of Limitations begins to run when complainant is told of discriminatory decision]; Matter of Trans World Airlines v State Human Rights Appeal Bd., 113 AD2d 889, 890).
*420 Ill
Turning to the relief accorded complainant, the propriety of the Commissioner’s order must be viewed in light of broad discretion the statute grants him (Matter of Maloff v City Commn. on Human Rights [Schriber], 46 NY2d 902, 904; New York Inst, of Technology v State Div. of Human Rights, 40 NY2d 316, 324; Albemarle Paper Co. v Moody, 422 US 405, 418-419; see, Executive Law § 297 [4] [c]). Unlawful discrimination having been found, the remedy need only be reasonably related to the discriminatory conduct. Unless the award is so arbitrary and capricious as to constitute an abuse of discretion, it is not erroneous as a matter of law (Matter of Imperial Diner v State Human Rights Appeal Bd., 52 NY2d 72, 79, supra; Matter of Mize v State Div. of Human Rights, 33 NY2d 53, 55, supra; Matter of Holland v Edwards, 307 NY 38, 46, supra).
In the present case, the Division ordered petitioner to notify its supervisory employees, in writing, that they were obliged to comply with the nondiscrimination provisions of the Human Rights Law, to offer complainant promotion, with back pay, to a position comparable to the one unlawfully denied her by petitioner, and to pay complainant $10,000 in compensatory damages for the hurt, humiliation and mental anguish she suffered as a result of the unlawful discrimination against her. Each of these remedies is specifically authorized by the statute and is warranted by the evidence in the record.
The statute authorizes the Division to issue an order requiring petitioner "to cease and desist” from any unlawful discriminatory practice (Executive Law § 297 [4] [c] [i]). In order to ensure that petitioner does, in fact, "cease and desist” from such unlawful race and sex discrimination in employment, the Division ordered that it remind its supervisory level employees, in writing, that racial or sexual discrimination is illegal. This minimal burden is within the statutory authorization and does not rise to the level of an abuse of discretion by the Division. The Division is also authorized to order petitioner to "upgrade” complainant’s position and compensate her with back pay (Executive Law § 297 [4] [c] [ii]). Indeed, this Court has noted than an award of back pay to a proven victim of discrimination "would seem to be a rather normal sanction to be imposed” (see, Matter of Mize v State Div. of Human Rights, 33 NY2d, 53, 56, supra) and upgrading complainant to *421 a position comparable to one twice unlawfully denied her was appropriate in the circumstances.
The Division’s authority to award compensatory damages to the victims of unlawful discrimination for the mental anguish occasioned by the discrimination is also firmly established (Executive Law § 297 [4] [c] [iii]; 300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra, at 184; Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights, 35 NY2d 143, 147). The Commissioner’s award of damages here is supported by the evidence and is within the range of awards previously approved by this and other courts (see, e.g., Matter of Lutheran Social Servs. v State Div. of Human Rights, 142 AD2d 950, affd 74 NY2d 824 [$25,000]; Matter of New York State Dept. of Correctional Servs. v McCall, 109 AD2d 953 [$10,000]). Complainant was the victim of petitioner’s discrimination based on both sex and race and the record reflects the hurt, humiliation and mental anguish its conduct caused her. Moreover, the effects of the discrimination were, as the Commissioner notes, renewed every working day when complainant reported to white males petitioner had promoted over her.
Inasmuch as the remedial provisions of the Division order are authorized by statute and supported by credible evidence in the record, the Division’s order with awards of promotion, back pay and compensatory damages for mental anguish should be reinstated by this Court.
Accordingly, the judgment of the Appellate Division should be reversed, with costs, and the order of the State Division of Human Rights reinstated.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Judgment reversed, with costs, and respondent’s determination reinstated.