In the Matter of MTA TRADING, INC., Petitioner/Cross Respondent, v GALEN D. KIRKLAND et al., Respondents, NEW YORK STATE DIVISION OF HUMAN RIGHTS, Respondent/Cross Petitioner, and T.D.A. TRADING CORP. et al., Respondents/Cross Respondents. [922 NYS2d 488]—

Proceeding pursuant to Executive Law § 298 to review so much of a determination of the Commissioner of the New York State Division of Human Rights dated September 17, 2009, as, upon adopting the recommendation and findings of an administrative law judge dated August 4, 2009, made after a compliance

hearing, imposed successor liability on MTA Trading, Inc., for the unlawful discriminatory discharge of the complainant, Yuri Gutkin, by T.D.A. Trading Corp., and the New York State Division of Human Rights cross-petitions pursuant to Executive Law § 298 to enforce (1) a determination of the Commissioner of the New York State Division of Human Rights dated March 17, 2008, which adopted the recommendation of "Adjudication Counsel" dated February 20, 2008, made after a hearing before an administrative law judge, finding that T.D.A. Trading Corp. discriminated against the complainant, Yuri Gutkin, based upon his age, and awarded damages in the principal sums of $1,800 for back pay, plus interest at the rate of 9% per annum from April 15, 2005, and $10,000 for mental anguish, plus interest at the rate of 9% per annum from the date of that determination, and (2) the determination dated September 17, 2009, which imposed successor liability upon MTA Trading, Inc., and imposed individual liability upon David Albilia for the unlawful discriminatory discharge of the complainant by T.D.A. Trading Corp.

Adjudged that the petition is granted, on the law, and that portion of the determination dated September 17, 2009, imposing successor liability on MTA Trading, Inc., is annulled; and it is further,

Adjudged that the branch of the cross petition which was to enforce the determination dated March 17, 2008, is granted, and T.D.A. Trading Corp. and David Albilia, individually, are directed to pay the complainant the principal sums of $1,800 for back pay, plus interest at the rate of 9% per annum from April 15, 2005, and $10,000 for mental anguish, plus interest at the rate of 9% per annum from March 17, 2008, and the cross petition is otherwise denied; and it is further,

Ordered that one bill of costs is awarded to MTA Trading, Inc., payable by the New York State Division of Human Rights, and one bill of costs is awarded to the New York State Division of Human Rights, payable by T.D.A. Trading Corp. and David Albilia.

In October 2006 the complainant, Yuri Gutkin, filed an administrative complaint with the New York State Division of Human Rights (hereinafter the NYSDHR) charging T.D.A. Trading Corp. (hereinafter TDA) with unlawfully discharging him based upon his age in violation of the New York State Human Rights Law (Executive Law § 290 et seq.). The complainant alleged that, for approximately one year before his discharge, his supervisor, David Albilia, the president of TDA, repeatedly told him that he was too slow and too old. After a public hearing at

which TDA failed to appear, the Commissioner of the NYSDHR (hereinafter the Commissioner) declined to adopt the recommendation of the administrative law judge (hereinafter ALJ) that the complaint be dismissed. Instead, in an order issued on March 17, 2008, the Commissioner adopted the proposed order of the NYSDHR's adjudication counsel, finding that Gutkin was unlawfully discharged by TDA based upon his age, and awarded damages to Gutkin for back pay and mental anguish.

Unable to collect the damages from TDA, which apparently became an inactive entity, the NYSDHR initiated a compliance hearing approximately nine months later, at which TDA again failed to appear. At the initial session of the hearing, the NYSDHR contended that Albilia, as the president of TDA, should be held individually liable for TDA's discriminatory conduct and that MTA Trading, Inc. (hereinafter MTA), should be held liable as TDA's successor in interest. The ALJ adjourned the hearing to allow the NYSDHR to amend the administrative complaint by adding Albilia and MTA as respondents, and to serve notice upon them. At the continuation of the hearing, MTA was the only respondent that appeared. Following the hearing, the ALJ, relying on a nine-factor test for successor liability developed by the federal courts under title VII of the federal Civil Rights Act of 1964 (42 USC § 2000e *et seq.* [hereinafter title VII]) (*see Equal Empl. Opportunity Commn. v MacMillan Bloedel Containers, Inc.*, 503 F2d 1086 [1974]), concluded that a substantial continuity of identity existed between TDA and MTA sufficient to impose successor liability on MTA for TDA's discriminatory conduct. The ALJ also concluded that TDA and Albilia, individually, were liable for Gutkin's damages. On September 17, 2009, the Commissioner adopted the ALJ's recommended findings of fact and order. MTA then commenced this proceeding seeking to annul the Commissioner's determination to impose successor liability on MTA, and the NYSDHR filed a cross petition seeking enforcement of the Commissioner's determinations.

Judicial review of a determination made by the NYSDHR after a hearing under the Human Rights Law is limited to whether the determination is supported by substantial evidence (*see Matter of State Div. of Human Rights [Granelle]*, 70 NY2d 100, 106 [1987]; *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 181-182 [1978]). A reviewing court "may not weigh the evidence or reject the Division's determination where the evidence is conflicting and room for choice exists" (*Matter of State Div. of Human Rights [Granelle]*, 70 NY2d at 106).

Here, the Commissioner's determination that TDA unlawfully discharged Gutkin from his employment based upon his age is supported by substantial evidence. Gutkin established a prima facie case of age discrimination, which created a presumption of unlawful discrimination that TDA failed to rebut by setting forth a legitimate, nondiscriminatory reason for the termination (*see Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 6 NY3d 265, 270-271 [2006]; *Ferrante v American Lung Assn.*, 90 NY2d 623, 629 [1997]). Moreover, the award of $1,800 in damages for back pay is supported by substantial evidence (*see Matter of Eastport Assoc., Inc. v New York State Div. of Human Rights*, 71 AD3d 890, 891-892 [2010]; *Matter of Hilal v New York State Div. of Human Rights*, 57 AD3d 898, 899 [2008]), and the Commissioner appropriately awarded predetermination interest on the back pay from April 15, 2005, one month after Gutkin's discharge (*see Matter of Aurecchione v New York State Div. of Human Rights*, 98 NY2d 21, 26-27 [2002]). The Commissioner's determination that Gutkin sustained mental anguish as a consequence of his discharge from employment is supported by substantial evidence. Moreover, the award of $10,000 for mental anguish "is reasonably related to the wrongdoing, is supported by substantial evidence, and is similar to comparable awards for similar injuries" (*Matter of Gold Coast Rest. Corp. v Gibson*, 67 AD3d 798, 800 [2009]; *see Matter of New York City Tr. Auth. v State Div. of Human Rights*, 78 NY2d 207, 218-219 [1991]; *Matter of Woehrling v New York State Div. of Human Rights*, 56 AD3d 1304, 1305-1306 [2008]; *Matter of State Div. of Human Rights v Stoute*, 36 AD3d 257, 266 [2006]; *Matter of Manhattan & Bronx Surface Tr. Operating Auth. v New York State Div. of Human Rights*, 225 AD2d 553, 554 [1996]).

With respect to the Commissioner's determination made after the compliance hearing, substantial evidence supports the determination that Albilia, as the president of TDA, was individually liable for the discriminatory discharge (*see Patrowich v Chemical Bank*, 63 NY2d 541, 542 [1984]; *Matter of State Div. of Human Rights v Koch*, 60 AD3d 777, 777-778 [2009]).

In determining whether to impose successor liability on MTA, the Commissioner appropriately relied on the test for successor liability developed by federal courts in employment discrimination cases under title VII. "The standards for recovery under the New York State Human Rights Law (*see* Executive Law § 296) are the same as the federal standards under title VII of the Civil Rights Act of 1964" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 305 n 3 [2004]; *see Rainer N. Mittl, Oph-

*thalmologist, P.C. v New York State Div. of Human Rights*, 100 NY2d 326, 330 [2003]; *Matter of Aurecchione v New York State Div. of Human Rights*, 98 NY2d at 25-26). As applied to title VII cases, the doctrine of successor liability is equitable in nature, and balances the purported successor's interests, the complainant's interests, and the policy embodied in the relevant statute (*see Cobb v Contract Transp., Inc.*, 452 F3d 543, 551-552 [2006]). There are nine factors that a court may consider in determining whether the imposition of successor liability would be equitable: "1) whether the successor company had notice of the charge, 2) the ability of the predecessor to provide relief, 3) whether there has been a substantial continuity of business operations, 4) whether the new employer uses the same plant, 5) whether he uses the same or substantially the same work force, 6) whether he uses the same or substantially the same supervisory personnel, 7) whether the same jobs exist under substantially the same working conditions, 8) whether he uses the same machinery, equipment and methods of production and 9) whether he produces the same product" (*Equal Empl. Opportunity Commn. v MacMillan Bloedel Containers, Inc.*, 503 F2d at 1094; *see Prince v Kids Ark Learning Ctr., LLC*, 622 F3d 992, 995 [2010]; *Rojas v TK Communications, Inc.*, 87 F3d 745, 750 [1996]). The *MacMillan* factors "are not in themselves the test for successor liability;" rather, they "are simply factors courts have considered when applying the three prong balancing approach" (*Cobb v Contract Transp., Inc.*, 452 F3d at 554; *see Equal Empl. Opportunity Commn. v MacMillan Bloedel Containers, Inc.*, 503 F2d at 1094). Some courts have condensed the *MacMillan* factors by focusing on the first three factors, and essentially subsumed the remaining factors into the continuity of business operations factor (*see Brzozowski v Correctional Physician Servs., Inc.*, 360 F3d 173, 177-178 [2004]).

Although the Commissioner identified the appropriate test for determining whether to impose successor liability on MTA, the Commissioner's determination to do so is not supported by substantial evidence. The first two factors, which have been identified as "critical" (*Rojas v TK Communications, Inc.*, 87 F3d at 750), do not support the imposition of successor liability here. Contrary to the Commissioner's finding, there was no evidence in the record demonstrating that MTA had notice of Gutkin's charge against TDA prior to the purported acquisition, merger, or transfer of assets from TDA to MTA (*id.*; *cf. Brzozowski v Correctional Physician Servs., Inc.*, 360 F3d at 178; *E.E.O.C. v Nichols Gas & Oil, Inc.*, 688 F Supp 2d 193, 202 [2010]). Moreover, although TDA appears to be unable to pay damages and satisfy the award, the Commissioner failed to

consider that Albilia, its president, who is individually liable to Gutkin, may be able to pay damages and satisfy the award. Despite the Commissioner's finding that there was a substantial continuity of business operations between TDA and MTA, this finding does not amount to substantial evidence supporting the imposition of successor liability on MTA where there is no evidence demonstrating that MTA had notice of the claim prior to the purported sale of assets, or that Albilia, as president of MTA's predecessor, is unable to satisfy the award (*see generally 300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d at 180-182). Accordingly, the portion of the Commissioner's determination imposing successor liability upon MTA must be annulled. Mastro, J.P., Rivera, Austin and Roman, JJ., concur.