Matter of Town of Hempstead v New York State Div. of Human Rights (2023 NY Slip Op 02129)

Matter of Town of Hempstead v New York State Div. of Human Rights

2023 NY Slip Op 02129

Decided on April 26, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 26, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
CHERYL E. CHAMBERS
WILLIAM G. FORD
LILLIAN WAN, JJ.

2019-14251
 (Index No. 608005/19)

[*1]In the Matter of Town of Hempstead, petitioner,
v
New York State Division of Human Rights, et al., respondents.

Berkman, Henoch, Peterson & Peddy, P.C., Garden City, NY (Donna A. Napolitano and Nicholas Tuffarelli of counsel), for petitioner.
Caroline J. Downey, General Counsel, Bronx, NY (Toni Ann Hollifield of counsel), for respondent New York State Division of Human Rights.
Lisa Whitaker, Roosevelt, NY, respondent pro se.

DECISION & JUDGMENT
Proceeding pursuant to Executive Law § 298 and CPLR article 78 to review a determination of the Commissioner of the New York State Division of Human Rights dated April 16, 2019, and cross-petition by the New York State Division of Human Rights pursuant to Executive Law § 298 to enforce the determination. The determination, after a hearing, found that the petitioner unlawfully discriminated against the complainant on the basis of her disability, awarded her back pay in the principal sum of $69,865.64, for the period from November 8, 2012, until the date of her retirement on June 8, 2014, plus interest at the rate of 9% per year from August 21, 2013, not offset by Workers' Compensation benefits received, and compensatory damages for mental anguish in the principal sum of $40,000, and assessed a civil penalty in the principal sum of $35,000.
ADJUDGED that the petition is granted, on the law and as a matter of discretion, without costs or disbursements, to the extent that the award of back pay is reduced from the principal sum of $69,865.64 to the principal sum of $17,779.91, plus interest at the rate of 9% per year from November 8, 2013, the award of compensatory damages for mental anguish is reduced from the principal sum of $40,000 to the principal sum of $10,000, plus interest at the rate of 9% per year from April 16, 2019, and the civil penalty assessed is reduced from the principal sum of $35,000 to the principal sum of $10,000, plus interest at the rate of 9% per year from April 16, 2019, the petition is otherwise denied, the determination is otherwise confirmed, and the proceeding is otherwise dismissed on the merits, and the cross-petition is granted to the extent that the determination, as amended, is enforced, and is otherwise denied.
In March 2000, the respondent Lisa Whitaker (hereinafter the complainant) was hired by the Town of Hempstead Department of Occupational Resources (hereinafter DOOR) as a life skills counselor. The complainant's duties included meeting with program participants who had experienced severe difficulties finding employment, counseling them on how to become gainfully employed, and entering information on a computer.
In or about September 2010, the complainant suffered a work-related injury. She submitted to DOOR a note from a doctor which stated that she was "totally disabled" and unable to work. She began receiving Workers' Compensation benefits in or about September 2011. In March 2012, the complainant filed a complaint with the respondent New York State Division of Human Rights (hereinafter the DHR), claiming discrimination in the conditions of her employment.
In October 2012, the complainant asked to return to work, noting that her doctor had advised her that she could work on a reduced schedule two to three days per week, but that she would be unable to type or to lift and carry objects. DOOR advised her in writing that she could not return to work with a reduced schedule and restricted duties. She could either return to work full time, five days per week, with full duties, or she could request a return from Workers' Compensation to full time work, and then upon her return request a partial leave of absence with a reduced schedule of three days per week. She was further advised that she would have to close her Workers' Compensation case before she could be considered for a reduced schedule. The complainant did not reply.
In March 2013, the complainant was diagnosed with major depressive disorder, which was related at least in part to her medical condition. In May 2013, the attorney handling the complainant's proceedings before the DHR requested an adjournment of an upcoming hearing until September 2013 because the complainant was undergoing several surgeries, and was classified as "totally disabled" under the Workers' Compensation law. In July 2013, the attorney submitted an additional adjournment request, and annexed a physician's report dated July 3, 2013, which stated that, because of her back pain, the complainant could not tolerate sitting through even a short hearing.
On July 15, 2013, the Town advised the complainant that, because she had been on a leave of absence for an occupational injury for in excess of one year, her employment was terminated pursuant to the Civil Service Law, but that she could be reinstated if she were found fit to return to work after a medical examination. In response, the complainant submitted to DOOR a report from another physician which stated that the complainant was able to return to work on full duties as of July 30, 2013. The complainant also requested a pre-termination hearing in accordance with the collective bargaining agreement between the Town and her union. In response to her request for a pre-termination hearing, the Town advised the complainant that in order to return to work she would have to submit a report clearing her to return from the doctor who found her unfit to attend the hearing before the DHR. The complainant then submitted a report from the doctor who found her unfit to attend the hearing before the DHR, which stated that the complainant could return to work "full duty as tolerated." The Town responded that the report was conditional, and that it would not accept the report as proof that the complainant could return to work on full duties.
The Town and the complainant attempted to negotiate a settlement of the proceedings before the DHR that would allow the complainant to return to work, but in December 2013, the complainant's position as life skills counselor was eliminated when DOOR's budget was adjusted. Further negotiations were halted in March 2014, when the complainant reopened her Workers' Compensation claim following an additional surgery on her shoulder. On June 8, 2014, the complainant retired from DOOR. On June 27, 2014, the complainant filed another complaint with the DHR, claiming that she had been forced to retire because she had not been afforded an accommodation for her disability.
After a hearing, an Administrative Law Judge (hereinafter ALJ) concluded that the Town discriminated against the complainant with respect to her disability when it refused to accept her medical documentation that she was fit to return to work full time, failed to inform her of the specific language that it would accept in her medical documentation, and eliminated her position when DOOR's budget was adjusted. The ALJ further determined that the Town's actions had been taken in retaliation for the complainant's litigation before the DHR. The ALJ recommended that the complainant be awarded back pay in the principal sum of $27,477.64, for the 10-month period from August 2013 through June 2014. The ALJ also recommended an award in the principal sum of $40,000 for mental anguish, and the imposition of a civil penalty in the principal sum of $35,000.
In a determination dated April 16, 2019, the Commissioner of the DHR concluded that the petitioner unlawfully discriminated against the complainant when it "refused to permit her to return to work in October of 2012," and failed to provide her with a reasonable accommodation for her disability. The Commissioner acknowledged that the Town informed the complainant that a reduced schedule was possible, but determined that the Town failed to establish that it was unduly burdensome to provide the complainant with typing assistance such as dictation equipment and/or another employee to assist her. The Commissioner increased the award of back pay to the principal sum of $69,865.64, for the period from November 8, 2012, until the date of the complainant's retirement on June 8, 2014, plus interest at the rate of 9% per year from August 21, 2013, not offset by Workers' Compensation benefits received. The complainant's retaliation claim was dismissed. In accordance with the recommendation of the ALJ, the Commissioner awarded the complainant the principal sum of $40,000 for mental anguish, and imposed a civil penalty in the principal sum of $35,000. Thereafter, the Town commenced this proceeding to review the determination, and the DHR cross-petitioned to enforce the determination. By order dated October 10, 2019, the Supreme Court transferred the proceeding to this Court pursuant to CPLR 7804(g).
"The scope of judicial review under the Human Rights Law is extremely narrow and is confined to the consideration of whether the determination . . . is supported by substantial evidence in the record" (Matter of New York State Div. of Human Rights v Roadtec, Inc., 167 AD3d 898, 899; see Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights, 100 NY2d 326, 331). "Substantial evidence 'means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact'" (Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights, 100 NY2d at 331, quoting 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180).
The determination that the complainant was entitled to back pay from November 2012, was not supported by substantial evidence in the record. Although a reasonable accommodation may include "job restructuring" (9 NYCRR 466.11[a][2]), "[t]he disabled individual must be able, with or without accommodation, to attain reasonable performance. Reasonable performance is not perfect performance or performance unaffected by the disability, but reasonable job performance, reasonably meeting the employer's needs to achieve its business goals" (9 NYCRR 466.11[d][1][ii]). Here, the complainant testified at the hearing that her position as a life skills counselor required knowledge of computer programs and writing skills, and that her duties included entering information on a computer. Thus, typing on a computer was an essential aspect of her position.
"[I]f an employee has a physical impairment that prevents the employee from performing the core duties of his or her job even with a reasonable accommodation, the employee does not have a disability covered by the statute, and consequently, the employer is free to take adverse employment action against the employee based on that impairment" (Jacobsen v New York City Health & Hosps. Corp., 22 NY3d 824, 834; see Executive Law § 292[21]). The employee bears the burden of proof on whether he or she is able to perform the core duties of his or her job even with a reasonable accommodation, and in this case the complainant failed to satisfy that burden (see Jacobsen v New York City Health and Hosps. Corp., 22 NY3d at 834). Further, requiring DOOR to reassign the complainant's work to coworkers would have been an unreasonable accommodation (see Pembroke v New York State Off. of Ct. Admin., 306 AD2d 185).
The complainant's employment was purportedly terminated pursuant to Civil Service Law § 71, which provides, in pertinent part, that "[w]here an employee has been separated from the service by reason of a disability resulting from occupational injury or disease as defined in the workmen's compensation law, he or she shall be entitled to a leave of absence for at least one year." However, that provision gives the employee the opportunity to seek reinstatement based upon medical certification "that such person is physically and mentally fit to perform the duties of his or her former position."
Here, in August 2013, the complainant sought reinstatement and submitted medical documentation of her fitness for duty. Yet she was not permitted to return to work and her position [*2]was eliminated when DOOR's budget was adjusted.
To make a prima facie showing of a violation of Executive Law § 296(1)(a), which prohibits discrimination in employment based upon a disability, the complainant "must show that (1) he or she is a member of a protected class; (2) he or she was qualified to hold the position; (3) he or she was terminated from employment or suffered another adverse employment action; and (4) the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination" (Matter of New York State Div. of Human Rights v Roadtec, Inc., 167 AD3d at 900 [internal quotation marks omitted]; see Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights, 100 NY2d at 330). "Once a prima facie case is made, the burden of production shifts to the employer to rebut the presumption with evidence that the complainant was discharged for a legitimate, nondiscriminatory reason" (Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights, 100 NY2d at 330). Here, the complainant established she was a member of a protected class, i.e., a person with a disability, her medical evidence indicated that she was capable of assuming full duty, but she suffered an adverse employment action, i.e., the denial of reinstatement, under circumstances giving rise to the inference of discrimination based upon her disability. The Town failed to rebut that presumption. Accordingly, the complainant was entitled to an award of back pay for the 10-month period from August 2013, when the complainant sought reinstatement, through June 2014, when she retired from DOOR. However, the Workers' Compensation benefits she received for that period should have been offset against an award of back pay to prevent a double recovery (see Matter of Grand Union Co. v Mercado, 263 AD2d 923; Matter of Allender v Mercado, 233 AD2d 153). The petitioner is self-insured with respect to Workers' Compensation benefits, therefore there is no risk that an insurance carrier will impose a lien on the award of back pay, resulting in the complainant suffering a double debit (cf. Matter of Rensselaer County Sheriff's Dept. v New York State Div. of Human Rights, 131 AD3d 777).
The ALJ recommended the imposition of a civil penalty in the principal sum of $35,000 based upon her finding of retaliation as well as discrimination in responding to the complainant's efforts for reinstatement in August 2013. Since the Commissioner dismissed the retaliation claim, the civil penalty imposed is disproportionate to the offense (see Matter of Kelly v Safir, 96 NY2d 32, 36; Matter of County of Erie v New York State Div. of Human Rights, 121 AD3d 1564, 1566), and must be reduced to the principal sum of $10,000 (see Matter of Mukattash v Human Rights Commn. of Westchester County, 97 AD3d 584, 586).
Similarly a court will intervene when an award for mental anguish is not reasonably related to the wrongdoing, is not supported by substantial evidence, or does not compare with awards for similar injuries (see Matter of Mutual Apts., Inc. v New York City Commn. on Human Rights, 203 AD3d 1154, 1158). Since the complainant's diagnosis of major depressive disorder occurred in March 2013, before the discriminatory conduct in August 2013, and was initially related at least in part to the complainant's medical condition, the award of the principal sum of $40,000 was not reasonably related to the discriminatory conduct (see Matter of Freudenthal v County of Nassau, 99 NY2d 285, 291; Matter of New York City Tr. Auth. v State Div. of Human Rights, 78 NY2d 217, 219), and must be reduced to the principal sum of $10,000 (see Matter of MTA Trading, Inc. v Kirkland, 84 AD3d 811; Matter of Woehrling v New York State Div. of Human Rights, 56 AD3d 1304, 1306).
Accordingly, the petition must be granted to the extent that the award of back pay is reduced from the principal sum of $69,865.64 to the principal sum of $17,779.91, plus interest at the rate of 9% per year from November 8, 2013, the award of compensatory damages for mental anguish is reduced from the principal sum of $40,000 to the principal sum of $10,000, plus interest at the rate of 9% per year from April 16, 2019, and the civil penalty imposed is reduced from the principal sum of $35,000 to the principal sum of $10,000, plus interest at the rate of 9% per year from April 16, 2019, the petition is otherwise denied, the determination is otherwise confirmed, and the proceeding is otherwise dismissed on the merits, and the cross-petition is granted to the extent that the determination, as amended, is enforced, and is otherwise denied.
DILLON, J.P., CHAMBERS, FORD and WAN, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court