Hribovsek v United Cerebral Palsy of N.Y. City (2024 NY Slip Op 00377)

Hribovsek v United Cerebral Palsy of N.Y. City

2024 NY Slip Op 00377

Decided on January 30, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 30, 2024

Before: Oing, J.P., Kennedy, Mendez, Rodriguez, Michael, JJ. 

Index No. 152849/17 Appeal No. 1463 Case No. 2022-05615 

[*1]Hedvika Polonca Hribovsek, Plaintiff-Respondent,
v
United Cerebral Palsy of New York City et al., Defendants-Appellants, John and Jane Does 1-10 etc., et al., Defendants.

Bond, Schoeneck & King, PLLC, New York (Jason F. Kaufman of counsel), for appellants.
Law Offices of Rudy A. Dermesropian, LLC, New York (Rudy A. Dermesropian of counsel), for respondent.

Order, Supreme Court, New York County (Arlene P. Bluth, J.), entered November 14, 2022, which, insofar as appealed from, denied defendants', United Cerebral Palsy of New York City (UCP), Sharon Frazier, and Shakira Robinson, motion for summary judgment dismissing plaintiff's complaint based on lack of successor liability and dismissed plaintiff's claims for discrimination based on disability and perceived disability and race and national origin, retaliation, and hostile work environment, unanimously modified, on the law, to dismiss plaintiff's claims for race and national origin discrimination and retaliation under the New York State Human Rights Law (NYSHRL) (Executive Law § 296), and New York City Human Rights Law (NYCHRL) (Administrative Code of the City of New York § 8-107), and otherwise affirmed, without costs.
The motion court properly concluded that there were issues of fact as to whether UCP can be held liable as a successor to the Federal Employment and Guidance Services (FEGS) under the nine factors set forth in Matter of MTA Trading, Inc. v Kirkland (84 AD3d 811, 815 [2d Dept 2011]). First, there is an issue of fact as to whether UCP had notice of plaintiff's charge of discrimination. Plaintiff argues that she repeatedly notified HR and Frazier, her management-level supervisor, both verbally and in writing about Frazier's improper conduct and requested a transfer to a different position and location. Frazier, who was an associate vice president at FEGS, became a senior coordinator of operations at UCP after the acquisition. These facts indicate that there is at least an issue of fact as to whether UCP had notice of plaintiff's potential claim of discrimination.
As to the second factor, both parties acknowledge that FEGS filed for bankruptcy and ceased to exist in 2015. Defendants argue that Local 215 and FEGS reached a settlement agreement in Bankruptcy Court in 2017, which included $2.2 million for any New York State Worker Adjustment and Retraining Notification Act (Labor Law § 860), severance, and employment-related claims that existed or may have existed against FEGS. This argument overlooks the fact that plaintiff was a nonunion employee, and the record does not clearly demonstrate that she would have been able to take advantage of the settlement. Accordingly, there is an issue of fact as to whether UCP's predecessor is available to provide relief to plaintiff.
Finally, factors three through nine point to issues of fact concerning whether there was a substantial continuity of business operations between FEGS and UCP. Plaintiff notes that UCP hired a number of FEGS employees without interviewing them. These employees continued to perform the same functions at UCP and remained at FEGS' former Bronx office. Defendants' assertion that the transfer agreement between the entities expressly foreclose any liability is just one factor to consider for the trier of fact in conjunction with the facts described above. Drawing all inferences [*2]in favor of plaintiff, a reasonable factfinder could determine that UCP is a successor to FEGS.
Next, the motion court properly declined to dismiss plaintiff's disability discrimination claims pursuant to the NYSHRL and NYCHRL. The parties do not dispute the first three elements—plaintiff was a member of the protected class, was qualified for the position, and was terminated (see Melman v Montefiore Med. Ctr., 98 AD3d 107, 113 [1st Dept 2012]). Turning to the fourth element, plaintiff established that the termination occurred under circumstances giving rise to an inference of disability discrimination because defendants began to single her out after she became disabled. Specifically, she was transferred to a different floor upon her return from leave, assigned inferior job duties, denied access to a computer, a desk and a log-in code, continuously monitored during work hours, repeatedly written up over a short period of time, and denied a cost-of-living raise awarded to all other employees. Defendants failed to rebut the presumption of discrimination as there are disputed issues of fact regarding plaintiff's performance at work upon her return from disability leave and other record evidence, which requires the issue of pretext to be submitted to the jury (see Dickerson v Health Mgt. Corp. of Am., 21 AD3d 326, 328 [1st Dept 2005]). Having satisfied the NYSHRL standard, plaintiff's discrimination claim under the more liberal NYCHRL, should also survive summary judgment.
Plaintiff did not meet her burden of establishing discrimination based on race and national origin by showing that her race and national origin played a motivating role in the adverse actions taken against her (see Matias v New York & Presbyt. Hosp., 137 AD3d 649, 650 [1st Dept 2016]). Plaintiff asserts that UCP's explanation for her termination was pretextual because Black colleagues were assigned less work and because Robinson mocked her accent. With respect to the former, during her deposition plaintiff acknowledged that the employees she was referring to were medical coordinators, which was a different position from the one she held, and she was unaware of the job responsibilities for medical coordinators. She also failed to explain why she was comparing the workloads of receptionists/administrative assistants to medical coordinators. Notably, although plaintiff stated that her fellow receptionist on the second floor at UCP was Black, she never alleged that he worked less. With regard to plaintiff's accent, while comments directed toward one's accent may be actionable, the remarks at issue here—that Robinson pretended not to understand plaintiff or mocked her English—are devoid of direct or indirect reference to national origin and are not probative of Robinson's animus to plaintiff's national origin.
Plaintiff's retaliation claims under the NYSHRL and NYCHRL must also be dismissed. With respect to her employment at UCP, plaintiff failed to demonstrate that she engaged in any [*3]protected activity (see Kwong v City of New York, 204 AD3d 442, 445 [1st Dept 2022], lv dismissed 38 NY3d 1174 [2022]) because she never complained that she was discriminated against due to her race, national origin, or disability. With regard to her employment at FEGS, plaintiff failed to demonstrate that she suffered an adverse employment action or that there was a causal connection between the protected activity and the adverse action.
Finally, we reject defendants' assertion that plaintiff's hostile work environment claims should be dismissed. Plaintiff raised issues of fact regarding whether defendants' alleged discriminatory conduct rose to the level required to support a claim of hostile work environment (see Kwong v City of New York, 204 AD3d at 445). Plaintiff alleged that Robinson mocked plaintiff's accent on a weekly basis, including in the presence of her coworkers, claimed she did not understand plaintiff, and offered to educate plaintiff on how to speak English. Further, Robinson engaged in excessive monitoring of plaintiff by reviewing surveillance footage to determine when plaintiff arrived at the office and when she left for the day and monitoring when plaintiff was away from her desk, even for bathroom breaks. Robinson also directed plaintiff not to write personal notes for herself in Slovenian. There was no indication that Robinson engaged in such close tracking of any other employee under her supervision.
We have considered defendants' remaining contentions and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 30, 2024